# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors, | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>ROCKET INTERNET CAPITAL PARTNERS II SCS, ROCKET INTERNET CAPITAL PARTNERS (EURO) II SCS, GFC GLOBAL FOUNDERS CAPITAL GMBH, GFC GLOBAL FOUNDERS CAPITAL GMBH & CO. BETEILIGUNGS KG NR. 1, WILLIAM HOCKEY LIVING TRUST, and 9YARDS CAPITAL INVESTMENTS II LP,<br><br>Defendants. | Adv. Pro. No. 23-50379 (JTD) |
| ALAMEDA RESEARCH LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC.<br><br>Plaintiffs,<br><br>-against-<br><br>MICHAEL GILES, et al.,<br><br>Defendants. | Adv. Pro. No. 23-50380 (JTD) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
## TO DISMISS THE COMPLAINT

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

16354780/1

| | |
|---|---|
| Dated October 20, 2023 | **MORRIS JAMES LLP** |
| | /s/ *Tara C. Pakrouh* |
| | Eric J. Monzo (DE Bar No. 5214) |
| | Tara C. Pakrouh (Bar No. 6192) |
| | 500 Delaware Avenue, Suite 1500 |
| | Wilmington, DE  19801 |
| | Telephone: (302) 888-6800 |
| | Facsimile: (302) 571-1750 |
| | E-mail: emonzo@morrisjames.com |
| | E-mail: tpakrouh@morrisjames.com |
| | |
| | *Counsel to Defendant Laurence Beal* |

16354780/1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT ........................................................................................................................................2

I.      PLAINTIFFS FAIL TO COUNTER DEFENDANTS' SHOWING THAT THE TRANSFERS ARE PROTECTED UNDER THE SAFE-HARBOR DEFENSE. ..................................................................................................................2

      A.    *Tribune*, Decided after *Merit*, is Directly on Point Rendering the Safe Harbor Applicable. ..................................................................................2

      B.    The Bank Acted as WRS's Agent, Despite Any Purported Limitations in the Escrow Agreement. . ................................................5

II.     PLAINTIFFS FAIL TO PLEAD ALL ELEMENTS OF ACTUAL FRAUD AGAINST MR. BEAL, THUS WARRANTING DISMISSAL. . ......................................6

      A.    Plaintiffs Mischaracterize the Allegations in the Complaint in a *Post Hoc* Attempt to Establish Fraudulent Intent. ..................................6

      B.    Plaintiffs' Fail to Plead Sufficient Badges of Fraud to Create a Confluence Thereof. . .........................................................................8

      C.    Plaintiffs Wholly Ignore the Ray Declaration. . .............................................9

III.    PLAINTIFFS ADMIT MR. BEAL NEVER RECEIVED A RETENTION PAYMENT. ................................................................................................................9

IV.    MR. BEAL JOINS IN AND ADOPTS THE ARGUMENTS SET FORTH BY THE OTHER DEFENDANTS. ......................................................................................9

CONCLUSION ....................................................................................................................................10

i

16354780/1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Indus., Inc. ex. Rel. ABS Litig. Trust v. Fifth Third Bank*,
   333 Fed.Appx. 994 (6th Cir. 2009) ................................................................................6

*Drivetrain, LLC v. X. Com., Inc.*,
   2023 WL 1804627, at *3 (Bankr. D. Del. Feb. 7, 2023) ..................................................8

*In re Live Well Fin., Inc.*,
   2023 WL 3995900 ...................................................................................................1, 4, 8

*Merit Mgmt. Grp. LP v. FTI Consulting, Inc.*,
   138 S. Ct. (2018) ................................................................................................1, 2, 3, 4

*In re Millenium Lab Holdings II*,
   2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ......................................................6, 7

*In re Nine West LBO Securities Litigation*,
   482 F. Supp.3d 187 (S.D.N.Y) (2020) ............................................................................3

*In re Plassein Intern. Corp.*,
   590 F.3d 252 (3d Cir. 2009) ............................................................................................2

*In re Resorts Int'l Inc.*,
   181 F. 3d 505 (3d. Cir. 1999) ..........................................................................................2

*In re Tribune Co. Fraudulent Conv. Litig.*,
   946 F. 3d 66 (2d Cir. 2019) ...............................................................................1, 2, 3, 4

**Statutes**

11 U.S.C. § 546(e) ..............................................................................................1, 2, 3, 4

**Other Authorities**

Restatement (Third) of Agency § 1.01 ..............................................................................6

Defendant Laurence Beal ("Defendant" or "Mr. Beal") hereby submits this reply in further support of Mr. Beal's *Reply Brief in Support of Defendant's Motion to Dismiss the Complaint* (the "Motion to Dismiss Brief").[1]  Mr. Beal incorporates and joins the arguments the other defendants in this action set forth in their reply briefs in response to Plaintiffs' Opposition Brief (as defined below) (collectively, the "Reply Memoranda").

## PRELIMINARY STATEMENT

Plaintiffs have not adequately alleged claims for fraudulent transfer under the Bankruptcy Code or state law.  Plaintiffs' Opposition Brief[2] only makes that more clear.  As to their constructive fraud claims, Plaintiffs fail to recognize the critical distinctions between the Supreme Court's decision in *Merit* and the later-decided Second Circuit decision in *Tribune*.  The Second Circuit's well-reasoned opinion clearly distinguishes *Merit* from the facts that were before it and provides substantial explanation as to how the 11 U.S.C. § 546(e) safe-harbor defense applied.  Plaintiff's attempt to misconstrue *Live Well*, as an extension of *Merit* in the Third Circuit in their favor, fails because *Live Well* is in accord.  The facts before this Court today are nearly identical to those in *Tribune* and Defendants establish that in their papers.  Therefore, the safe harbor should be applied here for all the same reasons as in *Tribune*.

As to their actual fraud claims, Plaintiffs' Opposition Brief changes tack from the Complaint and is replete with mischaracterizations and unpled allegations to assert the Embed acquisition was part of the FTX Insiders' overall scheme to appear profitable and/or to forestall the unveiling of the FTX Insiders' ruse.  However, the Complaint contains no such allegations to support or suggest this theory. Plaintiffs' *post hoc* attempt to supplement their Complaint through

---

[1] Adv. Docket No. 106. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Opening Brief, and the Opening Brief and Memoranda are incorporated herein by reference.

[2] "Plaintiffs' Opposition Brief" shall mean *Plaintiffs' Memorandum of Law in Oppoisition to Defendants' Motions to Dismiss the Complaint* [Adv. Docket No. 153].

1

their opposition should therefore be rejected.

And as they must, Plaintiffs concede there is no dispute that the $2,000,000 "Retention Payment" was paid to Mr. Beal, and Mr. Beal is not seeking any payment of these funds. Therefore, the Court should dismiss the Complaint as to it. Given the foregoing and as set forth in more detail below, the Complaint should be dismissed with prejudice.

## ARGUMENT

**I. PLAINTIFFS FAIL TO COUNTER DEFENDANTS' SHOWING THAT THE TRANSFERS ARE PROTECTED UNDER THE SAFE-HARBOR DEFENSE.**

**A.** *Tribune*, **Decided after** *Merit*, **is Directly on Point Rendering the Safe Harbor Applicable.**[3]

Plaintiffs correctly state the holding in *Merit Mgmt. Grp. LP v. FTI Consulting, Inc.* that the relevant transfer for the safe-harbor inquiry is the "overarching transfer the trustee seeks to avoid." 138 S. Ct., 883, 893 (2018). There, the Court found that because a sale-closing statement reflected shareholders as the sellers of stock to buyers, the intermediary banks were irrelevant in applying the safe-harbor defense. *Id.* at 891, 895.

In *In re Tribune Co. Fraudulent Conv. Litig.*, however, the bank's involvement was crucial to the defense. In *Tribune*, the bank acted as a depositary in connection with a leveraged buyout, wherein Tribune's shareholders were cashed out on a per-share basis. 946 F.3d 66, 72 (2d Cir. 2019). The *Tribune* court found the bank was Tribune's agent in the transaction, because it performed services such as (1) holding the deposit of the aggregate purchase price for the shares, (2) receiving tendered shares, (3) retaining them on Tribune's behalf, and (4) paying the tendering

---

[3] Plaintiffs incorrectly argue the safe harbor is an affirmative defense that cannot be used to dismiss a complaint under Rule 12(b)(6). *See* Plaintiffs' Opposition Brief, at p. 20. The Third Circuit has expressly dismissed complaints on 12(b)(6) grounds applying the safe-harbor defense. *See e.g., In re Plassein Intern. Corp.*, 590 F.3d 252, 259 (3d Cir. 2009) (affirming order to dismiss under Rule 12(b)(6) based on 11 U.S.C. § 546(e)); *In re Resorts Int'l Inc.*, 181 F. 3d 505 (3d. Cir. 1999) (same); *see also In re Tribune Co. Fraudulent Conv. Litig.,* 946 F. 3d 66 (2d Cir. 2019) (dismissing avoidance action at the motion to dismiss stage based on the safe-harbor defense). Plaintiffs' general cases on affirmative defenses do not change the state of the law on this point. Thus, there is no bar to dismissing the Complaint based on the safe-harbor defense at the Rule 12(b)(6) stage.
2

shareholders. *Id.* at 78. These duties rendered Tribune a customer of the bank with respect to the leverage-buyout payments, and also caused the bank to become Tribune's agent. *Id.* at 78–79. In so holding, the Second Circuit extensively considered and distinguished *Merit* from the facts before it. Thus, *Tribune* is not "irreconcilable" with *Merit* as Plaintiffs argue.

Here, as in *Tribune*, the Bank is crucial to the analysis of the safe-harbor defense. In connection with the reverse triangular merger, the Bank (1) held the deposit of the aggregate purchase price for Embed plus adjustments for working capital and a holdback, (2) coordinated the delivery and collection of transmittal letters and stock certificates (in other words, received the tendered shares), (3) retained them on behalf of WRS, the "Buyer," and (4) paid the tendering shareholders at the time of the merger and the surplus amounts post-closing. *See* Merger Agreement, §§ 3.2 (a), (b), (f), 3.4. Since the Bank is a financial institution for purposes of section 546(e), WRS, by virtue of its relationship with its agent bank, is also a financial institution and all payments made in connection with the Merger Agreement are safe harbored. *See In re Nine West LBO Securities Litigation*, 482 F. Supp.3d 187, 191-92 (S.D.N.Y) (2020) (holding that a party, by virtue of its relationship with its agent bank, was a financial institution under § 101(22)(A) and that all of the payments made to the public settlement payments and/or transfers made in connection with a securities contract under § 546(e) and were therefor safe harbored under § 546(e)).

Also, as in *Tribune*, the transaction in question was not simply a sale of stock with shareholders as the sellers—a fact the Supreme Court found particularly remarkable in *Merit*. *See Merit*, 138 S. Ct. at 891 ("Notably the closing statement for the transaction reflected Valley View as the 'Buyer,' the Bedford Downs shareholders as the 'Sellers,' and the $55 million as the 'Purchase Price.'"). Here, the transaction denoted WRS as the "Buyer" and Embed as the "Company" seller in an "Agreement and Plan of Merger," that was "entered into by and among"

3

(1) WRS, (2) Ingrained Merger Sub, Inc., (3) Embed, and (4) Shareholder Representative Services LLC for shares, options, and SAFEs.  Merger Agreement, at p. 1, § 3.2.  Neither Mr. Beal nor any other Defendant shareholder was disclosed as a party to this agreement—a far cry from *Merit* where the shareholders were the sellers themselves and the agreement was merely a sale of stock.  There is without question a significant distinction in a bank's role of merely passing funds from buyer to seller (as in *Merit*) from the Bank's role as an Exchange Agent and Escrow Agent involving a merger between four different parties—none of which were solely shareholders.  Thus, Plaintiffs' attempt to collapse the Bank's role is the transaction is unavailing.

Plaintiffs cite *In re Live Well Fin., Inc.* to evidence this Court's supposed adoption of *Merit* and disapproval of *Tribune*.  2023 WL 3995900 (Bankr. D. Del. June 13, 2023).  However, *Tribune* was never briefed before the *Live Well* court, so the Delaware Bankruptcy Court did not have the opportunity to analyze *Tribune* in rendering its decision.  *Id.* at *14.  Indeed, the *Live Well* court refused to apply the safe harbor because it was raised as a "single paragraph in [defendants'] Opening Brief [that was] conclusory in nature and fail[ed] to explain how § 546(e) is applicable to the facts of this case." *Id.*  The *Live Well* court further observed that schedule 1 of the stock purchase agreement showed "Live Well was to direct cash payments through various financial institutions;" but "there [wa]s no evidence that Live Well actually made payments in accordance with the Stock Purchase Agreement."  Here, Defendants have distinguished *Merit* in considerable detail in the opening and Reply Memoranda and explained how the Bank's extensive involvement in the transaction—by virtue of the express terms of the Merger Agreement that Plainitffs conveniently failed to attach to their Complaint—and the nature of the transaction itself, brings this case outside the scope of *Merit* and into the well-reasoned scope of *Tribune*.  Thus, unlike *Live Well* where Movants failed to distinguish *Merit* or explain how the financial institutions had a role greater than a "mere conduit," Defendants did so here with documentary support.

4

### B. The Bank Acted as WRS's Agent, Despite Any Purported Limitations in the Escrow Agreement.

Plaintiffs purport to disclaim any "agency" role the Bank had in its capacity as Exchange Agent because the **_Form of Escrow Agreement_** limited its duties. *See* Plainitffs' Opposition Brief, at p. 26. Plaintiffs are confused. The Bank served two roles: one as Exchange Agent, and another as Escrow Agent. The Merger Agreement prescribed the Bank's duties as Exchange Agent as follows:

(i) Immediately prior to the Effective Time, Buyer shall enter into a customary exchange agent agreement (the "Exchange Agent Agreement" [also referred to in the Merger Agreement as the "Paying Agent Agreement"]) with Western Alliance Bank (the "Exchange Agent");

(ii) pay to the Exchange Agent, by wire transfer of immediately available funds, an amount (the "Funding Amount") equal to (A) the Estimated Closing Merger Consideration, minus (B) the product of (1) the number of Dissenting Shares and (2) the Cash Per Fully-Diluted Company Share; provided that (x) Buyer will promptly thereafter pay to the Exchange Agent any amounts by which the Funding Amount increases due to any Dissenting Shares becoming Company Shares in accordance with Section 3.9 and (y) notwithstanding the foregoing, Buyer shall pay directly to the Surviving Corporation (instead of the Exchange Agent) the portion of Funding Amount attributable to the Estimated Closing Merger Consideration payable with respect to Vested Options, and the Surviving Corporation shall, subject to Section 3.2(c), pay such amounts through its payroll or other appropriate system (with respect to Pre-Closing Holders of Vested Options who are not employees of the Company as of the Effective Time) to the applicable Pre-Closing Holders;

(iii) accept surrendered Certificates to the Exchange Agent and a duly completed and executed letter of transmittal in the form attached hereto as Annex D ("Letter of Transmittal") (which shall include, among other things, an executed consent to the appointment of the Holder Representatives as contemplated by Article XI) to the Exchange Agent and such other documentation as may be reasonably requested by the Exchange Agent;

(iv) in exchange therefor, provide such portion of the Merger Consideration into which such holder's Company Shares shall have been converted as a result of the Merger; and

(v) If the Adjustment Amount, as finally determined pursuant to this Section 3.4, is a positive number, Buyer shall, within five (5) Business Days after the Determination Date, (A) pay, or cause the Exchange Agent to pay, to each Pre-Closing Holder an amount in cash equal to such holder's Pro Rata Share of the lesser of (x) the Adjustment Amount and (y) Adjustment Escrow Amount (such lesser amount, the "Adjustment

5

>   Surplus"), and (B) with the Holder Representative, direct the Escrow Agent to release to the Exchange Agent for payment to each Pre-Closing Holder such Pre-Closing Holder's Pro Rata Share of the Adjustment Escrow Funds.

Merger Agreement, at §§ 3.2(a), (b), 3.4(e)(ii). The Paying Agent Agreement was not annexed to the Merger Agreement. That the Escrow Agreement purported to limit the Bank's duties in its Escrow Agent role is of no consequence to its Exchange Agent duties. As noted by the terms of the Merger Agreement, the Bank acted as both Exchange Agent and Escrow Agent in the merger with sufficient control of the funds such that it was WRS's agent. The Sixth Circuit confronted this exact situation and determined that the specific language of an agreement denoting a party being an "agent" supports the existence of the agency relationship, notwithstanding a broad disclaimer of certain fiduciary duties in the agreement. *See ABS Indus., Inc. ex. Rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed.Appx. 994, 1002 (6th Cir. 2009). The *ABS Indus.* court further noted the Restatement (Third) of Agency § 1.01 comment e, provides that "to establish that a relationship is one of agency, it is not necessary to prove its fiduciary character as an element." *Id* at 1002 n.8. Therefore, the Court should disregard Plaintiffs' implausible argument that the Bank, acting as a "nominal" Exchange Agent, did not assume an agency role by virtue of limiting language in another document.

## II.   PLAINTIFFS FAIL TO PLEAD ALL ELEMENTS OF ACTUAL FRAUD AGAINST MR. BEAL, THUS WARRANTING DISMISSAL.

### A.   Plaintiffs Mischaracterize the Allegations in the Complaint in a *Post Hoc* Attempt to Establish Fraudulent Intent.

Absent specific facts directly demonstrating intent, Plaintiffs may plead circumstantial evidence that is sufficient to allow an inference of intent. *In re Millenium Lab Holdings II*, 2019 WL 1005657, at * 3 (Bankr. D. Del. Feb. 28, 2019). The Complaint is wholly devoid of any specific allegations that the Embed acquisition was undertaken with actual intent to hinder, delay, or defraud any of Plaintiffs' creditors. Realizing this, Plaintiffs now mischaracterize their

Complaint and attempt to outright supplement it with new allegations through their opposition brief in a *post hoc* attempt to plead actual fraud.

For example, Plaintiffs say the Complaint alleges the acquisition of Embed was meant to perpetuate FTX Insiders' fraudulent scheme, which was to "project an image of growth," "keep the scheme afloat and avert suspicion," and "forestall deception and prolong the fraud." Plaintiffs' Opposition Brief, at pp. 12–16. However, the Complaint does not contain any of these allegations. As to the Embed acquisition, the Complaint and Merger Agreement provide:

- "WRS began discussions to acquire Embed, ostensibly in order to provide FTX.US customers with the ability to trade stocks, in addition to cryptocurrency, on the FTX.US exchange platform." Complaint ¶ 4.

- FTX Insiders "pursued the Embed acquisition because they believed it would help expand FTX.US's operations into conventional securities markets[.]" *Id.* at ¶ 28.

- "[T]he respective boards of directors of Buyer, Merger Sub and the Company have determined that the Merger is in furtherance of and consistent with their respective business strategies . . . ." Merger Agreement, at p. 1.

These statements evidence an express intention to acquire Embed to support an existing platform, not a transaction that was entirely fake and designed to be leveraged for something else.

Without specific allegations, Plaintiffs must generally plead fraudulent intent, which is typically alleged through the badges of fraud. *See In re Millenium Lab*, 2019 WL 1005657, at *3. Plaintiffs have not done so in the Complaint. Rather, they attempt to manufacture and stretch innocuous allegations about limited group of people stealing money into a series of calculated steps to defraud ceditors. *See e.g.,* Plaintiffs' Opposition Brief, at pp. 12–16 (citing Complaint ¶¶ 26 (FTX Insiders took advantage of access to funds), 27 (same), 38 (FTX sought to expand), 32 (certain FTX Insiders diverted funds to themselves), 33–35 (hinding the fraud at Alameda), 36 (FTX Insider fraud admission), 49 (FTX Insiders hid the fraud), 53 (describing the flow of funds for Embed acquisition), 65 (FTX Insider plea allocation as to Alameda's purported insolvency),

66 (same), 67 (FTX Insider federal charges summary)).  In so doing, Plaintiffs also rely on *Drivetrain, LLC v. X. Com., Inc.* to excuse their deficiencies and failure to plead the badges of fraud.  *See* Plaintiffs' Opposition Brief, at p. 13.  *Drivetrain* does not support Plaintiffs, however. The *Drivetrain* court found fraudulent intent was pled because the "goal" of the debtor-founder's actions "was to trick investors into believing the company was" successful and the "contracts [he entered the debtor into], therefore, served no other purpose but 'to allow [the founder] and his associates to perpetuate fraud on Debtor's investors and Board.'" 2023 WL 1804627, at *3 (Bankr. D. Del. Feb. 7, 2023).  Plaintiffs cannot say the same for the Embed acquisition.  The Embed acquisition was entirely legitimate with multiple parties, resulting in a merger in exchange for payment.  Neither Plaintiffs nor the FTX Insiders manufactured the transaction and marketed it to induce investors in the company or even users on the platform.  Rather, Plaintiffs acquired Embed to support its existing platform and expand into conventional securities markets.  Complaint ¶¶ 4, 28; Merger Agreement, at p. 1.  Drivetrain founder's positive fraudulent inducement is not analogous to the facts here.  Accordingly, Plaintiffs cannot, and do not, point to any allegations in the Complaint to compare to the facts in *Drivetrain*.  Instead, they simply quote from *Drivetrain* and ask the Court to agree that *Drivetrain* was correctly decided without providing any parallel allegations from the Complaint at issue.  *See* Plaintiffs' Opposition Brief, at p. 14; *see also In re Live Well Fin., Inc.*, 2023 WL 3995900 at *17 (condemning attempts to "rehabilitate [the] complaint" in subsequent briefing where a complaint was devoid of certain allegations asserted in the brief; granting motion to dismiss as to this count).

      **B.**    **Plaintiffs' Fail to Plead Sufficient Badges of Fraud to Create a Confluence Thereof.**

Plaintiffs concede they plead only two badges of fraud that were purportedly alleged in the Complaint.  *See* Plaintiffs' Opposition Brief, at p. 16.  Defendants dispute their plausibility,

8

including as to Mr. Beal. Indeed, as mentioned in Defendants' Memoranda, merely pleading insolvency is insufficient as this factor alone is of little weight. *See e.g.,* Adv. D.I. 98 at p. 32; Adv. D.I. 99 at 15–16. Plaintiffs point to alleged facts proving insolvency but point to no authority that this badge alone is sufficient to plead actual fraud. Lack of reasonably equivalent value, the other purportedly present badge, is also not properly pled. *See e.g.,* Adv. D.I. 98 at pp. 35–37. As such, Plaintiffs fail to sufficiently plead a confluence of badges of fraud sufficient to infer actual fraudulent intent.

### C. Plaintiffs Wholly Ignore the Ray Declaration.

Plaintiffs also fail to contend with the fact that the Ray Declaration discredits any "plausibility" of the alleged transfers. As mentioned, Plaintiffs' CEO, in astonishing detail, describes the inability of Plaintiffs to know in detail their fundings.

### III. PLAINTIFFS ADMIT MR. BEAL NEVER RECEIVED A RETENTION PAYMENT.

Plaintiffs accuse Mr. Beal and other Defendants of "feign[ing] confusion" over the retention payments Plaintiffs plainly allege were paid in their Complaint. *Compare* Plaintiffs' Opposition Brief, at p.30, *with* Complaint at ¶¶ 5, 6. Regardless, there is no dispute that these funds were not paid to Mr. Beal, nor could they have been, and Mr. Beal is not seeking any payment of these funds. Therefore, the Court should dismiss the Complaint as it relates to the "Retention Payment."

### IV. MR. BEAL JOINS IN AND ADOPTS THE ARGUMENTS SET FORTH BY THE OTHER DEFENDANTS.

Mr. Beal hereby joins and incorporates the remaining arguments and reasoning in the Reply Memoranda.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated October 20, 2023　　　　　　　　**MORRIS JAMES LLP**

/s/ *Tara C. Pakrouh*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: tpakrouh@morrisjames.com

*Counsel to Defendant Laurence Beal*